UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | |
|---|---|
| AMBER CREED a/k/a ) | |
| CHRISTOPHER REED, ) | |
| ) | |
| Plaintiff ) | |
| ) | |
| vs. ) | CAUSE NO.  3:06-CV-465RM |
| ) | |
| FAMILY EXPRESS CORPORATION, ) | |
| ) | |
| Defendant ) | |

OPINION AND ORDER

Amber Creed, born Christopher Creed and was biologically a male when she filed her complaint, sues her former employer for sex discrimination.[1] The matter is before the court on Family Express' motion to dismiss for failure to state a claim upon which relief can be granted, and for the reasons that follow, the court grants its motion in part and denies its motion in part.

A Rule 12(b)(6) motion to dismiss challenges the complaint's sufficiency, not its underlying merits, see Gibson v. City of Chicago, 910 F.2d 1510, 1520  (7th Cir. 1990), and the court must accept all factual allegations in the complaint as true and draw all reasonable inferences from those facts in favor of the plaintiffs. Slaney v. Int'l Amateur Athletic Fed'n, 244 F.3d 580, 597 (7th Cir. 2001). "Federal

---

[1] It is unclear whether the plaintiff is still biologically a male, but the court refers to the plaintiff as Amber Creed, which consistent were her gender identity and preference. Ms. Creed suffers from gender identity disorder, which is a condition where an individual exhibits a strong and persistent cross-gender identification (either the desire to be or insistence that one is of the other sex) and a persistent discomfort about one's assigned sex or a sense of inappropriateness in the gender role of that sex. American Psychiatric Association, *Diagnostic and Statistical Manual of Mental Disorders, Text Revision* (DSM-IV-TR) 576 (4th ed. 2000).

Rule of Civil Procedure 8(a)(2) requires only 'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" Bell Atlantic Corp. v. Twombly, 127 S. Ct. 1955, 1964 (U.S. 2007). That means a viable complaint must include "enough facts to state a claim to relief that is plausible on its face." Id. at 1974. A plaintiff doesn't need to plead detailed factual allegations, but his "obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. Factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." Id. at 1965 (citations and footnote omitted).

Dismissal rulings often begin with a recitation of the allegations contained in the complaint, but Family Express has attached 2 exhibits to its motion—Ms. Creed's letter of termination stating she was fired because she didn't comply with its dress and grooming code, and a copy of the dress code—so the court must first determine whether it may consider these documents. Materials outside the pleadings generally aren't considered when assessing the sufficiency of a complaint under Rule 12(b)(6), but "[d]ocuments that a defendant attaches to a motion to dismiss are considered part of the pleadings if they are referred to in the plaintiff's complaint and are central to her claim." Venture Associates Corp. v. Zenith Data Systems Corp., 987 F.2d 429, 431 (7th Cir. 1993). Ms. Creed neither

refers to, nor relies on, the exhibits attached to Family Express' motion to dismiss, but Family Express says the exhibits are central to Ms. Creed's discrimination claims because they provide the true reason for her termination. The court disagrees.

The termination letter and dress code may eventually be determined to be relevant to the question of Family Express' motivation in terminating Ms. Creed, but her complaint alleges she was discharged because she didn't conform to particular gender stereotypes. This allegation must be taken as true at the pleading stage, and these documents aren't necessarily central to her demonstrating facts consistent with this claim. Family Express can rely on this evidence to prove its version of the case, but at this stage, the court cannot say these exhibits are central to assessment of Ms. Creed's discrimination claims. The court doesn't consider them.

The following facts are based upon Ms. Creed's allegations and are recited for purposes of this motion only. Ms. Creed began working for Family Express in February 2005. She applied for a sales associate position as Christopher Creed and had a masculine demeanor and appearance. Ms. Creed says her work met or exceeded Family Express' expectations throughout her employment, and that at all times during her employment she wore the polo shirt and slacks Family Express provided to all employees. Other aspects of her appearance, however, became more feminine over time—she sometimes wore clear nail polish and black

3

mascara and trimmed her eyebrows. In the fall of 2005, Ms. Creed began wearing her hair in a more feminine style.

On December 14, 2005, Ms. Creed was called into a meeting with Mr. Berrier, the Director of Operations, and Ms. Carlson, the Director of Human Resources. Mr. Berrier and Ms. Carlson told her that they had received a complaint about her feminine appearance and that she could no longer present herself in a feminine manner at work. Ms. Creed told them that she was transgender and was going through the process of gender transition. When she refused to present herself in a more masculine way at work, she was terminated.

"Title VII prohibits an employer from harassing an employee 'because of [the employee's] sex.'" Spearman v. Ford Motor Co., 231 F.3d 1080, 1084 (7th Cir. 2000)(citing 42 U.S.C. § 2000e-2(a)(1)). Our court of appeals has interpreted this prohibition to mean "it is unlawful to discriminate against women because they are women and against men because they are men." Ulane v. Eastern Airlines, Inc., 742 F.2d 1081, 1085 (7th Cir. 1984). "In other words, Congress intended the term 'sex' to mean 'biological male or biological female,' and not one's sexuality or sexual orientation." Spearman v. Ford Motor Co., 231 F.3d at 1084 (quoting Ulane v. Eastern Airlines, Inc., 742 F.2d at 1087). Based upon this interpretation of the term "sex," the Ulane v. Eastern Airlines court held that "Title VII does not protect transsexuals . . . ." 742 F.2d at 1085.

Ms. Creed says the Supreme Court's ruling in Price Waterhouse v. Hopkins, 490 U.S. 228, 251 (1989) "eviscerated" Ulane v. Eastern Airlines, but the court

4

sees no direct conflict in these cases. In Price Waterhouse v. Hopkins, the plaintiff had evidence that she had been denied a partnership because her male colleagues didn't think she was feminine enough. She received comments that she should act less aggressively, dress more femininely, style her hair, and wear make-up. The court held that requiring the plaintiff to conform to stereotypes about women was a form of sex discrimination:

> As for the legal relevance of sex stereotyping, we are beyond the day when an employer could evaluate employees by assuming or insisting that they matched the stereotype associated with their group, for in forbidding employers to discriminate against individuals because of their sex, Congress intended to strike at the entire spectrum of disparate treatment of men and women resulting from sex stereotypes (quotations omitted).

Still, the court doesn't read Price Waterhouse v. Hopkins to provide a cause of action based solely on a plaintiff's transgender status. The Price Waterhouse Court focused on the situation in which initiative, effort, and aggressiveness were rewarded with partnership for men, but the company then punished women who exhibited these "macho" traits. Price Waterhouse v. Hopkins, 490 U.S. at 251. It was the disparate treatment of men and women by sex stereotype that violated Title VII. *See* Schroer v. Billington, 424 F. Supp. 2d 203, 209 (D. D.C. 2006).[2]

In Ulane v. Eastern Airlines, the district court "made no findings supporting the notion that Ulane had been discriminated against because of her gender;

---

[2] The district court in Schroer v. Billington ultimately determined that Title VII covers discrimination based on sexual identity, but in light of this circuit's precedent, this court can't join in this conclusion.

5

instead, the lower court's findings focused exclusively on the discrimination she experienced because she was a transsexual." Doe by Doe v. City of Belleville, Ill., 119 F.3d 563, 592 (7th Cir. 1997), *vacated and remanded on other grounds*, City of Belleview v. Doe, 523 U.S. 1001 (1998). The net effect of Price Waterhouse v. Hopkins and Ulane v. Eastern Airlines for this circuit is twofold. First, it appears that the holding in Ulane v. Eastern Airlines—that discrimination against transsexuals because they are transsexuals isn't discrimination "because of...sex"—remains controlling law. *See* Spearman v. Ford Motor Co., 231 F.3d at 1084 (citing Ulane with approval for the proposition that "sex" means "biological male or biological female," and not one's "sexual preference"). Second, a transgender plaintiff can state a sex stereotyping claim if the claim is that he or she has been discriminated against because of a failure to act or appear masculine or feminine enough for an employer, but such a claim must actually arise from the employee's appearance or conduct and the employer's stereotypical perceptions. Doe by Doe v. City of Belleville, Ill., 119 F.3d at 581 (holding that Title VII doesn't permit an employee to be treated adversely because his or her appearance or conduct does not conform to stereotypical gender roles); *see also* Schroer v. Billington, 424 F. Supp. 2d at 211.

In counts II and IV, Ms. Creed alleges she was discriminated against "on the basis of her transgender status." Nothing in this allegation suggest Ms. Creed's discharge was triggered by Family Express' stereotypical perceptions of a particular gender, so an actionable sex discrimination claim based on this

6

allegation is speculative. Spearman v. Ford Motor Co., 231 F.3d at 1085 ([W]hile sex stereotyping may constitute evidence of sex discrimination . . . [t]he plaintiff must show that the employer actually relied on [the plaintiff's] gender in making its decision." ). The court therefore grants Family Express' motion to dismiss counts II and IV.[3]

In counts I and III, Ms. Creed alleges that she was discriminated against because Family Express perceived her "to be a man who did not conform with gender stereotypes associated with men in our society, or because it perceived Plaintiff to be a woman who did not conform with gender stereotypes associated with women in our society." To establish a discrimination claim based on sex stereotyping, the plaintiff must demonstrate that a particular action can be attributed to gender stereotypes. Doe by Doe v. City of Belleville, Ill., 119 F.3d at 581.

From Ms. Creed's allegations in the complaint, it can (and for today's purposes, must) reasonably be inferred that Family Express perceived Ms. Creed to be a man while she was employed as a sales associate. That her managers requested she appear more masculine during business hours allows the inference

---

[3] Counts III and IV allege sex discrimination under Indiana Code § 22-9-1-3(1), which defines discrimination as "the exclusion of a person from equal opportunities because of race, religion, color, sex, disability, national origin, or ancestry." Because Indiana's definition of discrimination is similar to 42 U.S.C.A. § 2000e-2(a), Indiana courts construe this provision consistent with Title VII. Indiana Civil Rights Com'n v. Marion County Sheriff's Dept., 644 N.E.2d 913, 915 (Ind. Ct. App. 1994). Both parties address Counts III and IV under Title VII, and nothing in the court's review of Indiana law suggests a different standard should apply to claims of sex discrimination under § 22-9-1-3(1). See Indiana Civil Rights Com'n v. City of Muncie, 459 N.E.2d 411, 418 (Ind. Ct. App. 1984).

that the managers harbored certain stereotypical perceptions of how men should dress. Ms. Creed's allegation she was terminated after refusing to present herself in a masculine way permits the inference she was terminated as a result of these stereotypical perceptions, rather than simply her gender dysphoria.

The court recognizes that not all gender stereotyping is discriminatory. *See* Schroer v. Billington, 424 F. Supp.2d at 208. Disparate treatment claims focus on the employer's motivation for the adverse employment action at issue, *see* Pilditch v. Board of Educ. of City of Chicago, 3 F.3d 1113, 1118 n. 2 (7th Cir.1993), but whether Family Express acted with a stereotypical motivation needn't be determined at this stage. *See* Doe by Doe v. City of Belleville, Ill., 119 F.3d at 581-582. Ms. Creed's factual allegations supporting her claim she was terminated because of her failure to comply with male stereotypes support a plausible claim she suffered discrimination because of her sex. Id. at 581 ("[A] man who is harassed because his voice is soft, his physique is slight, his hair is long, or because in some other respect he exhibits his masculinity in a way that does not meet his coworkers' idea of how men are to appear and behave, is harassed 'because of' his sex."). The court therefore denies Family Express' motion to dismiss counts I and III.

Accordingly, the defendant's motion to dismiss [Doc. No ] is DENIED IN PART AND GRANTED IN PART. The court dismisses counts II and IV, while counts I and III continue to pend.

SO ORDERED.

Entered:  August 3, 2007

/s/ Robert L. Miller, Jr.
Chief Judge
United States District Court